**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **DRAPER FRANK WOODYARD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL ACTION NO. 25-000429-JB-N** |
| | ) | |
| **BALDWIN COUNTY SHERIFF'S DEPARTMENT, *et al*.,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

**REPORT AND RECOMMENDATION**

This action is before the Court for the screening of Plaintiff Draper Frank Woodyard's amended and operative complaint against Deputy McNeal, Officer Kramer, Officer Lavendoski, Baldwin County, Sheriff,[1] and Warden.[2] (Doc. 5). Because Plaintiff was granted leave to proceed in this action without prepayment of fees (*see* doc. 3), his complaint is subject to review under 28 U.S.C § 1915, which requires dismissal of any portion of the complaint that is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see also* § 1915A. After a thorough

[1] The Court takes judicial notice that the Sheriff of Baldwin County, Alabama at the time the complaint arose was Huey "Hoss" Mack. *See* Fed. R. Evid. 201(b) (recognizing the court's ability to take judicial notice of public records that are "not subject to reasonable dispute" and the accuracy of which can "reasonably be questioned."). The operative complaint identifies "Sheriff" as a defendant, whereas the initial complaint (Doc. 1) and court docket reflects "Hoss Mack" as a defendant. The Court recognizes that this is the same defendant. This report will reference Baldwin County, AL Sheriff Mack as "Sheriff" as Woodyard does in the operative complaint. (*See* Doc. 5).

[2] Woodyard's initial complaint also named as defendants Baldwin County Sheriff's Department, State of Alabama (Department of Corrections), Board of Pardons and Paroles, Billy Bowens, Baldwin County medical or health care. (*See* Doc. 1). Woodyard, however, did not identify these individuals or entities in his amended, operative complaint; nor does the operative complaint assert allegations against these individuals or entities. (*See* Doc. 5). Accordingly, the Clerk is **DIRECTED** to terminate these individuals and entities from the docket.

review of Woodyard's complaint, and for the reasons discussed below, the undersigned **RECOMMENDS** that complaint be **DISMISSED without prejudice** for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

## I. Summary of the Complaint.

Woodyard alleges that on May 17, 2024, he was assaulted by Officers Lavendoski and Kramer of the Foley Police Department and Baldwin County Sheriff's Deputy McNeal.

According to Woodyard, Officers Lavendoski and Kramer assaulted him during an arrest inside a Walmart store on May 17, 2024, and again that same day when removing him from his cell at the Foley City Jail to transfer him to the Baldwin County Corrections Center for parole violation.[3] (Doc. 5 at 4). Woodyard claims upon arrival at the Baldwin County Corrections Center ("BCCC"), he walked through a "body scan x-ray machine like the ones TSA uses in the airport." (*Id.*). When the scanner detected no contraband, he was led into a "closet" by Officer McNeal and "several more officers" and "instructed to strip." (*Id.*). Woodyard complied. Officer McNeal then ordered him to squat and cough. Woodyard complied. Officer McNeal "then shouted, 'Let me see that dick. I wanna see that dick'" and threatened to tase Woodyard if he did not comply. (*Id.*). Specifically, Woodyard claims Officer McNeal "jumped" him and "threatened [him] with a taser in a sexually suggestive way," by poking the taser into Woodyard's "buttocks and the small of [his]

[3] Woodyard claims he was transferred to the Baldwin County Corrections Center ("BCCC") for a parole violation, despite that he was not on parole. (*Id*. at 4-5). He claims he told the Foley officers, including Officers Lavendoski and Kramer, that he was not on parole when they asked him to submit to handcuffs to be transferred to the BCCC. Woodyard claims because he was not on parole and the officers refused to give him his bond information when he demanded it, he refused to follow commands to exit his cell to be transferred and was assaulted, describing that when his cell door was opened to remove him for transfer, he was "jumped" by Officers Lavendoski and Kramer, causing "injuries to [his] body" and "further damage to [his] hands and feet" (*id*. at 4) and that he was denied medical treatment for the injuries "for more than 2 hours upon arrival at the Baldwin County Jail." (*Id*. at 5).

back." (*Id*. at 5). Woodyard alleges "this caused a scene" and other officers rushed in and he was "pushed forcefully" from the closet by the officers, "handled roughly," and "slammed forcefully" into a restraint char. (*Id*. at 4). Woodyard alleges he remained in the punitive chair for hours "after informing McNeal and others [he] needed medical treatment for wounds reinjured that morning and the ones [] just sustained in the incident with [McNeal]." (*Id*. at 4). He claims, "[t]he nurse came but refused to treat [his] wounds for hours." (*Id*.).

Woodyard generally alleges that attacks were "unprovoked" and he was "refused medical treatment." (*Id*. at 5). He claims Officer McNeal's "commands were unlawful and discriminatory in nature" and that his attack was "unprovoked." (*Id*. at 5). Woodyard is suing Officers Lavendoski, Kramer and McNeal for excessive use of force, discrimination, sexual harassment and assault, failure to protect, and deliberate indifference to serious medical needs. And he is suing the Baldwin County Corrections Center (who he names as the Baldwin County Jail), Warden or Sheriff for failure to train, failure to protect, and implementation of unsafe policies, protocols and customs. He seeks compensatory, punitive, and nominal damages. (*Id*. at 7).

## II. Screening Standard.

Plaintiff's complaint is subject to screening pursuant to 28 U.S.C. § 1915, both because he is a prisoner seeking relief from a governmental entity or officer, *see* § 1915A(b), and because he is proceeding without prepayment of fees, *see* § 1915(e)(2)(B). Section 1915 requires the Court to review Plaintiff's complaint and "dismiss the case at any time if the court determines that. . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). Dismissal for these reasons is mandatory rather than discretionary. *See* § 1915A(b) ("On review, the court shall identify cognizable claims or dismiss the complaint. . . .");

§ 1915(e)(2)(B) ("Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that" the claims are frivolous or fail to state a claim.).

A claim is frivolous "when it appears the plaintiff 'has little or no chance of success.'" *Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993) (per curiam) (citation omitted). A court may conclude a claim has little or no chance of success when the claim is "based on an indisputably meritless legal theory," when its "factual contentions are clearly baseless," or when the defendant is immune from suit. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

"A plaintiff's affirmative misrepresentation regarding his prior litigation history, when the complaint form required disclosure of such history and the plaintiff's statements were made under penalty of perjury, constitutes abuse of the judicial process warranting dismissal of the case without prejudice as 'malicious' under § 1915(e)(2)(B)(i) and § 1915A(b)(1)." *Ealy v. Corr. Corp. of Am.*, 2015 WL 9647546, at *1 (N.D. Fla. Dec. 18, 2015) (collecting Eleventh Circuit cases affirming dismissals of actions without prejudice where plaintiffs failed to disclose their prior litigation history), *report and recommendation adopted*, 2016 WL 75074 (N.D. Fla. Jan. 6, 2016).

A complaint may be dismissed for failure to state a claim upon which relief may be granted when it fails to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009) (internal quotation marks omitted). This means a complaint must have sufficient factual allegations that "raise a right to relief above the speculative level" and the allegations must "show[] that the pleader is entitled to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

In reviewing the complaint, the Court liberally construes the plaintiff's allegations, holding them to a more lenient standard than those of an attorney. *Tannenbaum v. U.S.*, 148 F.3d 1262, 1263 (11th Cir. 1998). Furthermore, a court "accepts the complaint's factual allegations as true," *Daker v. Ward*, 999 F.3d 1300, 1307 (11th Cir. 2021), but does not treat as true conclusory assertions or a recitation of a cause of action's elements. *Iqbal*, 556 U.S. at 681. In addition, a *pro se* litigant "is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure." *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989).

**III. Discussion.**

To state a claim for relief under § 1983, a plaintiff must allege facts showing that a person acting under color of state law violated a specific federal constitutional right or federal statutory provision. *Doe v. Sch. Bd. of Broward Cty., Fla.*, 604 F.3d 1248, 1265 (11th Cir. 2010) *see also Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992) ("A successful section 1983 action requires a showing that the conduct complained of (1) was committed by a person acting under color of state law and (2) deprived the complainant of rights, privileges, or immunities secured by the Constitution or laws of the United States."). In a § 1983 action, the plaintiff must also to establish a causal connection between a defendant's actions and the alleged Eighth Amendment violation. *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986) (per curiam). That is, the plaintiff must show that the named defendant was the proximate cause of his injuries, *Troupe v. Sarasota Cnty., Fla.,* 419 F.3d 1160, 1165 (11th Cir.), *cert. denied*, 547 U.S. 1112 (2006), and the injury "would not have occurred but for [defendant's] conduct and if there were no unforeseeable intervening acts superseding [defendant's] liability." *Martinez v. Carson*, 697 F.3d 1252, 1255 (10th Cir. 2012) (citation omitted).

**A. Claims against Foley Police Officers Lavendoski and Kramer**

The claims against Officers Lavendoski and Kramer are due to be dismissed in this action, as they are duplicative of those Woodyard raised in a previously filed and pending suit in this Court, case number 25-cv-333-KD-N, *Woodyard v. Foley Police Department Commissioner and Chief, et al*.[4]

A complaint that merely repeats pending or previously litigated claims is an abuse of the judicial process and may properly be dismissed as frivolous or malicious under §§ 1915(e)(2)(B)(i) and 1915A(b)(1). *See Daker v. Ward*, 999 F.3d 1300, 1308 (11th Cir. 2021); *McWilliams v. State of Colorado*, 121 F.3d 573, 574 (10th Cir. 1997) ("'[R]epetitious litigation of virtually identical causes of action' may be dismissed under § 1915 as frivolous or malicious.") (quoting *Bailey v. Johnson*, 846 F.2d 1019, 1021 (5th Cir. 1988)); *see also Curtis v. Citibank*, N.A., 226 F.3d 133, 138 (2d Cir. 2000) ("As part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit.").

In case number 25-cv-333-KD-N, Woodyard brings claims against Officers Kramer and Lavendoski (and other officers) for excessive force, false arrest, failure to protect or prevent harm, and deliberate indifference to serious medical need. (*See* Doc. 6 at 25-cv-333-KD-N). Woodyard asserts allegations that he was assaulted by the defendants during his arrest at Walmart on May 17, 2024, and was assaulted later that day, when he was "jumped" again by Officers Lavendoski and Kramer, while being transferred to the BCCC. Woodyard claims he was injured during the

[4] *See United States v. Rey*, 811 F.2d 1453, 1457 n.5 (11th Cir. 1987) ("A court may take judicial notice of its own records and the records of inferior courts."); *Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010) (per curiam) ("The district court properly took judicial notice of the documents in Horne's first case, which were public records that were 'not subject to reasonable dispute' because they were 'capable of accurate and ready determination by resort to sources whose accuracy could not reasonably be questioned.' ") (quoting Fed. R. Evid. 201(b)).

incident(s) and was denied medical attention.[5] These are the same factual allegations plead in the current matter, 25-cv-429-JB-N. Because Woodyard knowingly filed the current complaint with duplicate claims asserted in an earlier lawsuit, it is recommended that the claims against Officers Lavendoski and Kramer be dismissed from this action as frivolous and malicious pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(1) and 1915A(b)(1).

**B. Claims against Officer McNeal**

Woodyard is suing Deputy McNeal for excessive use of force, discrimination, sexual harassment and assault, failure to protect or prevent harm, and deliberate indifference to serious medical needs.

**1. Excessive Force**

Woodyard's excessive force claim is analyzed under the Fourteenth Amendment,[6] which "protects a pretrial detainee from the use of excessive force that amounts to punishment." *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989). To state an excessive force claim, a pretrial detainee "must show [] that the force purposely or knowingly used against him was objectively unreasonable. . . . A court must make this determination from the perspective of a reasonable

[5] Officers Lavendoski and Kramer (and other defendants) have answered the suit and provided a special report, including video footage, supporting their denial of Woodyard's claims. (*See* Doc. 21 at 25-cv-333-KD-N).

[6] The Court takes Woodyard's version of the facts as true, including that he was not on parole at the time of his arrest on May 17, 2024, and considers Woodyard to be a pretrial detainee at the time the complaint claims arose, rather than a convicted prisoner; thus, his claims are governed by the Fourteenth Amendment's Due Process Clause, instead of the Eighth Amendment's Cruel and Unusual Punishment Clause that applies to convicted prisoners. *Jacoby v. Baldwin Cnty.,* 835 F.3d 1338, 1344 (11th Cir. 2016). However, "the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving . . . pretrial detainees." *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996); *cf. Kinglsey v. Hendrickson*, 135 S. Ct. 2466, 2772-77 (2015) (holding that in the context of excessive force, pretrial detainees must show that the force used against them was objectively unreasonable under the Fourteenth Amendment, rather than malicious or sadistic under the Eighth Amendment).

officer on the scene, including what that the officer knew at the time, not with the 20/20 vision of hindsight." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). Whether the force used against Woodyard is considered objectively unreasonable turns on the "facts and circumstances of each particular case." *Id*. Courts use six nonexclusive factors for determining whether the reasonableness of force used: (1) "the relationship between the need for the use of force and the amount of force used:" (2) "the extent of the plaintiff's injury;" (3) " any effort made by the officer to temper or to limit the amount of force;" (4) "the severity of the security problem at issue;" (5) "the threat reasonably perceived by the officer;" and (6) "whether the plaintiff was actively resisting." *Id*. Inherent in the protection afforded by the constitution is the principle that not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson v. McMillian,* 503 U.S. 1, 9–10 (1992). Indeed, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Id.* at 9 (citation and quotations omitted). Moreover, "it is well settled law that a claim for verbal abuse or threats is not cognizable" under § 1983. *Scott v. Cook,* 2005 WL 5976136, *4 (N.D. Fla. Nov. 15, 2005)(unpublished) citing *Siglar v. Hightower,* 112 F.3d 191, 193 (5th Cir. 1997) (verbal abuse not cognizable under 1983).

Woodyard's allegations against Deputy McNeal originate squarely from his noncompliance during a strip search, which Woodyard admits. (*See* Doc. 5 at 4). It is clear from the complaint that Woodyard disagreed with the necessity of Deputy McNeal's order and believes he may pick and choose which orders to obey and demand that prison officials act in a specific way or comply with his perception of an event. However, inmates are not at liberty to choose which orders to obey nor do inmates "have the constitutional right to order prison officials to obey their own rules." *Berry v. Hilburn*, No. 23-380-JWD-RLB, 2023 WL 8104833, at *4 (M.D. La.

Oct. 17, 2023). Moreover, "prison guards do not have the luxury or obligation to convince every inmate that their orders are reasonable and well-thought out." *Danley v. Allen*, 540 F.3d 1298, 1307 (11th Cir. 2008), *overruled on other grounds by Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010). "Orders given must be obeyed. Inmates cannot be permitted to decide which orders they will obey, and when they will obey them. *Soto v. Dickey*, 744 F.2d 1260, 1267 (7th Cir. 1984). "Allowing inmates to pick and choose which orders to obey would result in chaos and disorder." *Berry*, 2023 WL 8104833, at * 4. Here, because Woodyard failed to comply with Deputy McNeal's orders to complete the intake strip search, some degree of force was warranted. Before using force in response to Woodyard's resistance, Deputy McNeal first communicated with a warning, though in a threatening manner, that Woodyard would be tased if he failed to follow orders. Thus, attempting to limit the need for force. Additionally, the force ultimately used was curbed with the help from assisting officers who "forcefully pushed" Woodyard to the ground and "forcefully" put him in a restraint chair. Based on the complaint, Woodyard did not suffer an injury due to the force used against him by Deputy McNeal. *See Wilkins v. Gaddy*, 559 U.S. 34, 37-38 (2010) (noting that an inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim) (internal quotation marks and citation omitted); *see, e.g., Oliver v. Powell*, 250 F. Supp. 2d 593, 603–04 (E.D. Va. 2002) (Without "extraordinary circumstances to compensate for a *de minimis* injury, [a] mere poke in the back fails to" state a claim for excessive force.); *Howse v. DeBerry Correctional Institute*, 537 F. Supp. 1177 (M.D.Tenn.1982) (no excessive force found where officer shoved inmate and grabbed him so tightly by his shirt front that he suffered pain and another officer grabbed plaintiff, pushed him down a corridor and poked him "harshly" in the chest while threatening him); *Ledlow v. Givens*, 500 F. App'x 910, 912-13 (11th Cir.) (the slap received by the inmate after being restrained did

not rise to an Eighth Amendment violation even though he had a bloody nose and small facial laceration that had resulted from being initially restrained), *cert. denied*, 569 U.S. 1033 (2013); *Anthony v. Schackmann*, 402 F. App'x 207, 208 (9th Cir. 2010) (an "unprovoked, single slap constituted only de minimis force ... which does not violate [the] Eighth Amendment unless it is of a sort repugnant to the conscience"); *Hill v. Vannatta*, 123 F. App'x 723, 724 (7th Cir. 2005) (a claim for a slap that caused redness and swelling was dismissed as *de minimis* pursuant to 28 U.S.C. § 1915A and was affirmed on appeal); *Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007) (the open-hand shove or push, which caused the inmate to fall breaking his hip and wrist, was "as near to the minimum amount [of force] as an officer can employ" even though the results could not have been anticipated). Considering the allegations plead against the legal standard, Woodyard has failed to establish that the force used against him was in violation of the constitution. The force used against Woodyard, based on the complaint allegations reflect that the force used minimal and reasonable in response to Woodyard's failure to follow Deputy McNeal's order. The force was proportionate to the situation and was used to maintain security and restore/retain order. Additionally, any claims that Deputy McNeal failed to protect him from harm fail because Woodyard has failed to establish an unconstitutional use of force or risk to his safety from which he needed to be protected. Consequently, these claims are due to be dismissed for failure to state a claim upon which relief may be granted.

**2. Sexual Harassment and Assault**

To the extent Woodyard complains of verbal threats or harassment, his claims fail, as do his claims of sexual assault. To establish such constitutional violations, Woodyard must show: the complained of conduct was objectively "harmful enough" or "sufficiently serious" to rise to a constitutional level and that the defendant acted with a "sufficiently culpable state of mind."

*Hudson v. McMillian*, 503 U.S. 1, 8, 20 (1992). Thus, a plaintiff must plead facts showing "a prison staff member, acting under color of law and without legitimate penological justification, touched [plaintiff] in a sexual manner or otherwise engaged in sexual conduct for the staff member's own sexual gratification, or for the purpose of humiliating, degrading or demeaning the prisoner." *Bearchild v. Cobban*, 947 F.3d 1130, 1144 (9th Cir. 2020). Woodyard's allegations, however, do not indicate that Deputy McNeal conducted the strip search for sexual gratification. Nor do the allegations indicate that Deputy McNeal wanted to "see" Woodyard's penis for any improper purpose or for any sexual reason. And there is no suggestion that Deputy McNeal ever touched Woodyard in a sexually gratifying way. Instead, Woodyard describes that his privacy was protected by conducting the strip search in a "closet," limiting the scope of the intrusion. The strip search included a visual examination, where no touching or fondling occurred. And no force was used until Woodyard failed to comply with direct orders. Accordingly, Woodyard has described a strip search conducted for penological purposes during booking and has failed to allege the essential elements of a constitutional sexual assault claim. Similarly, Woodyard's claims of verbal abuse or harassment are insufficient to state a constitutional claim, as "verbal abuse alone is insufficient to state a constitutional claim," and threats that are not carried out do not violate the Constitution. *Hernandez v. Fla. Dep't of Corr.*, 281 F. App'x 862, 866 (11th Cir. 2008). Accordingly, Woodyard has failed to state a claim for relief under § 1983, and these claims are due to be dismissed.

**3. Discrimination**

For a prisoner to establish a discrimination claim, he must allege: "(1) he is similarly situated with other prisoners who received more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest such as race." *Jones v. Ray,* 279

F.3d 944, 946–47 (11th Cir.2001) (quotation omitted). In the prison context, interests that are protected by the Constitution from invidious discrimination are "race, religion, national origin, poverty or some other constitutionally protected interest." *Damiano v. Florida Parole & Prob. Comm'n,* 785 F.2d 929, 932–33 (11th Cir.1986); *see Cruz v. Skelton,* 543 F.2d 86, 92–93 (5th Cir.1976) (invidious intent is required to be shown to state an equal protection claim as mere statistical disparity is insufficient), *cert. denied,* 433 U.S. 911 (1977). In his complaint, Woodyard does not identify similarities to other inmates or persons who have received favorable or different treatment. Nor does he identify a protected class to which he belongs and for which he has received discriminatory treatment. Nor does he specify what discriminatory treatment or action occurred. Accordingly, Woodyard's complaint is void of facts that would support his conclusion that Deputy McNeal's "commands were unlawful and discriminatory in nature." *See Iqbal*, 556 U.S. at 678 (finding that [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). With the absence of supporting facts, Woodyard has failed to state a plausible claim for discrimination and his claim is due to be dismissed.

**4. Denial of Medical Care**

To establish a claim for deliberate indifference to medical need, a plaintiff must show: (1) he had a serious medical need; (2) the defendant was deliberately indifferent to that need; and (3) the defendant's deliberate indifference and the plaintiff's injury were causally related. *Hinson v. Bias*, 927 F.3d 1103, 1121 (11th Cir. 2019) (citing *Taylor v. Hughes*, 920 F.3d 729, 733 (11th Cir. 2019)). The Eleventh Circuit has repeatedly explained:

> [A]"serious medical need" is an injury or condition that a physician has diagnosed as requiring treatment or that "is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." To qualify as a "serious medical need," an injury or condition, if not treated, must create a "substantial risk of serious harm."

*Id.* at 1121–22 (internal citations omitted). Currently, Woodyard has not plead sufficient facts to demonstrate that his "wounds" created an objectively serious medical need. While a medical need does not have to be "life-threatening to be serious," *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 20210), it must result in further significant injury, harm if left untreated. *Taylor v. Adams*, 221 F.3d 1254, 1257 (11th Cir. 2000). Indeed, Woodyard has not plead any factual allegations describing his injury or what "further damage" occurred or what "injuries . . . reopened in feet and hands" because of the complaint incident. Nor does Woodyard expound on what "wounds [were] just sustained in the incident with [Deputy McNeal]." (Doc. 5 at 4). To the extent he claims he had "some swelling to the neck and bottom the face near jaw and ear" (Doc. 5 at 5), his allegations do not evidence a serious medical need. Indeed, none of Woodyard's allegations indicate a medical issue or need so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Nor has Woodyard alleged that his condition worsened due to the lack of medical care or delay in care. For these reasons, Woodyard's allegations fall short of stating that Deputy McNeal, "the nurse," or any staff member was deliberately indifferent to his medical needs on May 17, 2024, and this claim is due to be dismissed.

**C. Claims against Baldwin County Corrections Center, Warden or Sheriff**

Woodyard is suing the BCCC, Warden or Sheriff for failure to train, failure to protect, and implementation of unsafe policies, protocols and customs. (Doc. 5 at 6). Because he makes no claim that these defendants personally participated in any alleged conduct, he seeks relief against these defendants as supervisors. (Doc. 5 at 6).

To start, in order to have a viable § 1983 action, a plaintiff must name as a defendant an individual or entity capable of being sued. *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992). The capacity of a party to be sued is generally determined by the law of the state in which the

district court is located. Fed. R. Civ. P. 17(b)(3); *Dean*, 951 F.2d at 1214. Under Alabama law, the sheriff "has the legal custody and charge of the jail in his or her county and all prisoners committed thereto . . . ." Ala. Code § 14-6-1. "Under Alabama law, a county sheriff's department lacks the capacity to be sued." *Dean*, 951 F.2d at 1215 (citing *White v. Birch*, 582 So. 2d 1085, 1087 (Ala. 1991)). It therefore follows that a subdivision of a sheriff's department, such as the jail, also lacks the capacity to be sued. *See Russel v. Mobile Cnty. Sheriffl*, No. Civ. A, 00-0410CBC, 2000 WL 1848470, at *2 (S.D. Ala. Nov. 20, 2020) (finding that the Mobile County Jail was not a suable entity and dismissing plaintiff's § 1983 claim against the jail as frivolous); *Jones v. Huntsville Police Dept.*, No. 5:11-cv-00413-WMA-RRA, 2012 WL 1569562, at *2 (N.D. Ala. Apr. 2, 2012) ("To the extent the plaintiff seeks to sue the Madison County Jail, the Jail is not a legal entity subject to suit under 42 U.S.C. § 1983 and therefore is not a proper party defendant to this action."), *report and recommendation adopted*, 2012 WL 1569522 (N.D. Ala. Apr. 26, 2012); *see also Ex parte Dixon*, 55 So. 3d 1171, 1172 n.1 (Ala. 2010) ("Generally, the departments and subordinate entities of municipalities, counties, and towns that are not separate legal entities or bodies do not have the capacity to sue or be sued in the absence of specific statutory authority.") (quotation omitted). Therefore, the Baldwin County Corrections Center or jail is not a suable entity for the purposes of this § 1983 action. Consequently, Woodyard's claims against the BCCC are due to be dismissed as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1).

As to any claim against the Warden and/or Sheriff, "the standard by which a supervisor is held liable in [his or] her individual capacity for the actions of a subordinate is extremely rigorous." *Christmas v. Harris County, Ga.*, 51 F.4th 1348, 1355 (11th Cir. 2022) (quotation omitted). There is no "vicarious liability, including respondeat superior, in § 1983 actions." *Goebert v. Lee County*, 510 F.3d 1312, 1331 (11th Cir. 2007). Thus, a defendant "may not be sued under Section 1983 for

the acts of others but, rather, only for its own acts." *Hamilton v. City of Jackson*, 508 F. Supp. 2d 1045, 1056 (S.D. Ala. 2007), *aff'd*, 261 F. App'x 182 (11th Cir. 2008). Accordingly, a plaintiff asserting a claim under 42 U.S.C. § 1983 must show a causal connection between each defendant's actions, orders, customs, or policies and the alleged violation of the plaintiff's rights. *Zatler*, 802 F.2d at 401. A casual connection may be established by alleging sufficient facts that show:

> (1) a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so; (2) a supervisor's custom or policy results in deliberate indifference to constitutional rights; or (3) facts support an inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so.

*Myrick v. Fulton County, Ga.*, 69 F.4th 1277, 1297 (11th Cir. 2023) (quotation omitted).

Woodyard maintains that because "the officers weren't punished, he assumes being illegally taken into a closet and violated is a custom at the BCCC." (Doc. 5 at 6) (cleaned up). Woodyard's speculation and conclusory theory, however, does not equate to facts that establish a policy or custom. A custom is "a practice that is so settled and permanent that it takes on the force of the law." *McDowell v. Brown*, 392 F.3d 1283, 1290 (11th Cir. 2004) (quotation omitted). "In order for a plaintiff to demonstrate a policy or custom, it is generally necessary to show a persistent and wide-spread practice." *Id.* (quotation omitted); *see also Craig v. Floyd County, Ga.,* 643 F.3d 1306, 1311 (11th Cir. 2011) (stating that proof of a single incident of unconstitutional activity is insufficient to show a policy or custom under § 1983 even when the incident involved several employees of the defendant). Woodyard has failed to show a persistent, widespread practice demonstrating that the Baldwin County Sheriff or BCCC Warden ever knew of had a policy or custom, put in place by the Sheriff or Warden to "violate" inmates in the closet during booking strip searches. *McDowell*, 392 F.3d at 1290. Instead, Woodyard makes vague, conclusory allegations supported solely by his personal experience on or around May 17, 2024. Woodyard's

allegation of the single incident is insufficient to establish a liability against the Baldwin County Sheriff and/or BCCC Warden under § 1983. *See Depew v. City of St. Marys, Ga.*, 787 F.2d 1496, 1499 (11th Cir. 1986) ("[R]andom acts or isolated incidents are insufficient to establish a custom or policy.").

Moreover, there can be no supervisory liability when there is no underlying constitutional violation. *Stalley v. Cumbie,* 124 F.4th 1273, 1288 (11th Cir. 2024) ("[U]nder our precedent, plaintiffs cannot maintain a supervisory liability claim tied to an alleged underlying constitutional violation if it is determined that no such violation occurred). Here, the facts alleged by Woodyard are not sufficient to state a constitutional violation. Consequently, he cannot plausibly state a supervisory claim against the BCCC, Sheriff or Warden.

**IV. Conclusion.**

For the reasons discussed herein, it is **RECOMMENDED** that the claims against Officers Lavendoski and Kramer be **DISMISSED with prejudice** from this action as frivolous and malicious pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(1) and 1915A(b)(1). It is further **RECOMMENDED** that Plaintiff Woodyard's claims against Baldwin County Corrections Center, Baldwin County Sheriff, and Warden of the Baldwin County Corrections Center be **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).[7]

**<u>NOTICE OF RIGHT TO FILE OBJECTIONS</u>**

[7] The undersigned recognizes that dismissal of Plaintiff Woodyard's complaint without prejudice has the effect of precluding him from refiling his claim due to the running of the statute of limitations; thus, the dismissal is tantamount to a dismissal with prejudice. *Justice v. United States*, 6 F.3d 1474, 1482 n.15 (11th Cir. 1993). Nevertheless, the undersigned finds dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B) is warranted because Woodyard has had the opportunity to amend his complaint and continues to fail to state a claim upon which relief may be granted.

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D.ALA. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **26th** day of **August, 2026**.

**/s/ KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**